TRAVIS v. NEDERLAND LIFE INS. CO., Limited.

(Circuit Court of Appeals, Eighth Circuit. October 15, 1900.)

No. 1,380.

1. CONTRACT—EFFECT OF MODIFICATION OF PROPOSAL.
    The addition of a new term or condition to a proposal before it has been accepted is, in legal effect, a withdrawal of that proposal, and the submission of a new proposition, of which the additional term or condition is a part.

2. SAME — ACCEPTANCE OF FORMER PROPOSITION AFTER MODIFICATION NUGATORY.
    The acceptance of a former proposition, after the proposer has attached to it a new condition or term which is rejected, does not constitute a contract, because the minds of the parties never meet at the same time upon the same stipulations.

3. INSURANCE — WRITTEN APPLICATION A PROPOSITION — EFFECT OF MODIFICATION BEFORE ACCEPTANCE.
    A written application for insurance is a proposition to contract, and not an agreement. Where, after the application was signed and mailed, but before it was accepted, the applicant attached a new term or condition, which the agents of the company declined to accede to, held, that the subsequent acceptance of the original proposition did not constitute a contract of insurance, because the minds of the parties never met at the same time upon the same stipulations.

4. WITNESS—EFFECT OF INTEREST—COMPETENCY TO TESTIFY TO TRANSACTIONS WITH DECEASED GOVERNED BY FEDERAL AND NOT BY STATE STATUTES.
    Where congress has legislated upon the subject of the competency of witnesses in the courts of the United States, the statutes of the states and the decisions of their courts have no application. Congress has declared the effect of the interest of a witness in the issue tried upon his competency, and specified the cases in which he is incompetent to testify to a transaction with, or statement by, a deceased person, in section 858 of the Revised Statutes, and this legislation is controlling upon this subject in the courts of the United States, whatever the statutes of the states and the decisions of their courts upon the same subject may be.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Northern District of Iowa:

This was an action upon a policy of insurance of $3,000 on the life of Edward M. Travis for the benefit of his wife, Olive M. Travis, the plaintiff in

error, and the defense was that no contract of insurance was ever consummated. There was a trial to a jury, and at the close of the evidence the court instructed them to return a verdict for the defendant upon this state of facts: The Nederland Life Insurance Company, Limited, the defendant in error, was a foreign corporation engaged in the business of life insurance. L. I. Dubourcq, whose office was in New York City, was the president of its United States branch, and the only person in this country authorized to accept applications for insurance or to issue policies on its account. Edward Ferguson, whose office was in the city of Chicago, was the manager of its Western department. Leisander & Love were its general agents under Ferguson for the state of Iowa, with authority to procure applications for policies of insurance and to discharge the duties which usually devolve upon managers of agencies, and James H. B. Woodroffe was a soliciting agent under them. On November 11, 1896, Woodroffe obtained from Edward M. Travis his written application to the defendant for a policy of insurance of $3,000 on his life for the benefit of his wife, the plaintiff, and his promissory notes for the amount of the first annual premium. Woodroffe mailed this application and these notes to Leisander & Love at Des Moines, Iowa, who forwarded the application by mail to Edward Ferguson at Chicago, used the notes as collateral to a loan which they obtained for themselves from a bank, and reported that the premium was paid. Ferguson mailed the application to Dubourcq in New York for his acceptance or rejection. Travis was a medical examiner for the defendant in the town where he lived, and on November 12, 1896, the day after his application, he wrote to Leisander & Love that they should not send his policy to him if the company was to have another medical examiner, one McGrath, in his town, and its agent was to turn over examinations to the latter, as he had been doing. McGrath was at this time and continued throughout to be a medical examiner of the defendant in the town where Travis resided. On November 18, 1896, Travis wrote Ferguson at Chicago, and directed him not to send his policy if the company was to have two medical examiners in his town. This letter was referred by Ferguson to Leisander & Love, who, on November 20, 1896, wrote Travis to the effect that the company still had, and would continue to have, two medical examiners in his town, and that it would divide its business equally between them. This correspondence was not communicated to Mr. Dubourcq prior to November 27, 1896, and on that day, in ignorance of the facts which it discloses, he approved the original application, and issued a policy in accordance with its terms, which was sent to Travis, and was received by him on December 3, 1896. On December 8, 1896, he returned this policy to Leisander & Love in a letter in which he stated that the reason for his action was that the company had two medical examiners in his town. There was further correspondence and subsequent conversations, but the contractual relations of Travis and the company remained in the same condition in which they were left on December 8, 1896, until he was drowned, on March 9, 1897. Counsel for plaintiff in error claim that upon this state of facts a contract was established, and the plaintiff should have recovered.

T. D. Healy (A. N. Botsford, M. F. Healy, J. W. McGrath, and Eugene Bryan, on the brief), for plaintiff in error.

N. T. Guernsey (H. T. Granger, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Propositions, negotiations, correspondence, conversations do not make a contract unless the minds of the parties meet upon the same stipulations and they consent to comply with them. Until this has been done, either party has the right to withdraw or to modify his proposition, to make new conditions or proposals, or to retire abso-

lutely from the negotiations. The addition of a new term or condition to an earlier proposal before the latter has been accepted is the withdrawal of the earlier proposition, and the submission of a new proposal of which the new condition or term is a part. From the time the new condition is submitted the earlier proposition is withdrawn, and it is no longer open to acceptance or rejection by the party to whom it was presented.

An application for life insurance is not a contract. It is only a proposal to contract on certain terms which the company to which it is presented is at perfect liberty to accept or to reject. It does not in any way bind the company to accept the risk proposed, to make the contract requested, or to issue a policy. Nor does it in any way bind the applicant to take the policy, to make the contract he proposed, or to pay the premium until his proposal has been accepted by the company and its policy has been issued. Until the meeting of the minds of the parties upon the terms of the same agreement is effected by an acceptance of the proposition contained in the application or of some other proposition, each party is entirely free from contractual obligations. The applicant may withdraw his application and refuse to take insurance on any terms. He may modify his proposal, may affix additional conditions or terms to it, or may make an entirely new proposition, while the company may refuse to entertain any proposition, or may reject that presented and submit a substitute. Nor is the freedom of the parties to retire from the negotiations or to modify their proposals, at any time before some proposition has been agreed upon by both, ever lost or affected by the fact that the applicant accompanies his proposal or application with a promise to pay the premium in the form of promissory notes, or even by an actual payment thereof. Until his application is accepted, such a promise or payment is conditional upon the acceptance, and his application is still no more than a proposition to take and to pay for the insurance if the company accepts his terms. The payment of the premium when the application is signed does not bind the company to accept his terms, nor does it estop the applicant from recovering the money he pays if the company rejects his proposal. These are fundamental rules of the law of contracts, which are constantly applied in this and other courts, and which are decisive of the case before us. Paine v. Insurance Co., 51 Fed. 689, 691, 2 C. C. A. 459, 461, 10 U. S. App. 256, 263, 264; Society v. McElroy, 83 Fed. 631, 640, 28 C. C. A. 365, 374, 49 U. S. App. 548, 564; McMaster v. Insurance Co., 40 C. C. A. 119, 99 Fed. 856, 866; Giddings v. Insurance Co., 102 U. S. 108, 112, 26 L. Ed. 92; Griffith v. Insurance Co. (Cal.) 36 Pac. 113, 115; Insurance Co. v. Young's Adm'r, 23 Wall. 85, 107, 23 L. Ed. 152; Insurance Co. v. Ewing, 92 U. S. 377, 381, 23 L. Ed. 610; Harnickell v. Insurance Co., 111 N. Y. 390, 399, 18 N. E. 632; Whiting v. Insurance Co., 128 Mass. 240; Markey v. Insurance Co., 118 Mass. 178; Id., 126 Mass. 158; Rogers v. Insurance Co., 41 Conn. 97, 106; Insurance Co. v. Collerd, 38 N. J. Law, 480, 483; Heiman v. Insurance Co., 17 Minn. 153, 157 (Gil. 127); Hogben v. Insurance Co. (Conn.) 38 Atl. 214–216.

Travis made his application for insurance and gave his notes for the first premium to Leisander & Love, the agents of the company, on November 11, 1896. But there could be no contract, and Travis and the agents all knew there would be no agreement between the company and the former, until his application was accepted by Dubourcq in New York; for he was the only officer of the defendant in the United States who had authority to accept applications or to issue policies for it. Until Dubourcq made an acceptance the company was free to reject, and Travis was free to withdraw, or to modify his application, or to make a new proposition in its place. On the day after he had signed it, and on November 18, 1896, he did withdraw it. He attached to it a new condition or term, the legal effect of which was to withdraw his former proposition, and to make a new one, of which this condition or term was a part. He notified the agents of the company that he would not take the insurance for which he had applied unless they would make him the sole medical examiner of the company in the town in which he resided, and they declined to do so. This notification had been given to the agents, and they had declined to accept this new condition of his proposition, seven days before the original application was accepted by Dubourcq in New York. He accepted the earlier proposal in ignorance of these facts. Could the company or the agents have enforced the collection of the notes which Travis gave them for the premium in this state of facts, after the agents had received his withdrawal of his original application, and after they had thus declined his new proposal? The question is susceptible of but one true answer. Would it not have been a perfect defense to those notes, in the hands of the company or its agents, that he had withdrawn his first application before it was accepted, and had made a new one, which they had declined to accept? Neither the agents nor the company could have overcome such a defense. The truth is that the minds of the parties to this negotiation never met upon the terms of any contract, and neither the notes nor the policy ever became effective. Before the original application was accepted in New York, Travis had withdrawn it, and had made another, which had not, indeed, been communicated to Dubourcq, but which had been received by the agents of the company, and which rendered it impossible for Dubourcq to make any contract which would bind Travis to the original application which he had lawfully withdrawn. When, on November 27, 1896, the mind of Dubourcq accepted and consented to the terms of the proposition contained in the original written application, the mind of Travis had receded and withdrawn its assent from those terms, and settled upon different terms, which no agent of the company ever accepted; so that there never was a time when the minds of the parties to this negotiation met upon, and they agreed to comply with, the same stipulations of any contract. This conclusion accords with reason, with the established precedents, and with the understanding of Travis in his lifetime; for within five days after he received the policy he returned it, and refused to take the insurance, because the terms of his new proposition had not been accepted. There was therefore no contract be-

tween the parties to this action, and no error in the charge of the court to the jury to return a verdict for the defendant.

It is assigned as error that the agent Leisander was permitted to testify to a conversation which he had with Travis after the policy was returned to the agents, to the effect that an agreement was reached between him and Travis that the policy should be returned to the company, and his notes for the premium should be destroyed, over the objection of the plaintiff in error that this testimony was incompetent, under the provisions of the statute of Iowa, because it related to a personal transaction between the witness and a person deceased. The contention of counsel for the plaintiff in error is that Leisander was disqualified, under section 4604 of the Code of Iowa of 1897, because he was the person through or under whom the plaintiff in error derived her interest by assignment or otherwise, and the statute of Iowa prohibits the examination of such a person as a witness to any personal transaction or communication between him and a person deceased. But it is only where the constitution, treaties, or statutes of the United States do not otherwise provide that the laws of the several states are to be regarded as rules of decision in trials at common law in the courts of the United States. Rev. St. § 721. In this case the statutes of the United States do otherwise provide. Section 858 of the Revised Statutes reads:

"Sec. 858. In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried: provided, that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects, the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."

A glance at this statute discloses the fact that the case before us does not fall within the proviso or exception to the general rule enacted by congress that no witness shall be excluded in any civil action because he is a party to or interested in the issue tried. Since congress has legislated upon this subject, the rule which it has established is controlling in the courts of the United States, and the testimony of this witness was properly received. The judgment below is affirmed.