UNITED STATES of America,
Appellant,

v.

SUNSHINE DAIRY, Inc., a Corporation, Appellee.

No. 13830.

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1954.

Warren E. Burger, Asst. Atty. Gen., Edward H. Hickey, Oliver C. Biddle, Washington, D. C., Benjamin Forman, New York City, T. S. L. Perlman, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Eugene, Or., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for appellant.

Thomas H. Ryan, Anthony Pelay, Jr., Ryan & Pelay, Portland, Or., for appellee.

Before HEALY, POPE and CHAMBERS, Circuit Judges.

HEALY, Circuit Judge.

The appellee in this case, hereafter called Sunshine, is an Oregon corporation licensed by the State as an authorized distributor and dealer of fluid milk and cream suitable for human consumption in the Portland marketing area. The Veterans' Administration, an agency of the United States, operates a hospital known as Marquam Hill in Portland, Oregon. The legal title to this institution and the ground thereof is and long has been in the United States.

On June 4, 1946, the Administration extended invitations to milk producers desiring to submit a bid for the supplying of certain dairy products to its Marquam Hill hospital during the period July 1, 1946 to and including June 30, 1947. On June 12 following Sunshine submitted its bid to furnish the aforementioned products. On June 12 also, an official order was promulgated and issued over the signature of the director of the Oregon State Department of Agriculture, effective as of that date. The order, made pursuant to state law, established new minimum prices on the sale of dairy products. The prices submitted by Sunshine in its bid were below those established by the order. By letter dated June 14, 1946, the chief of the Milk Control Section of the Department wrote Sunshine stating that the bid that it had submitted to the Administration was below the minimum prices established by the Department. The letter further stated that the Department had notified the addressee by telephone and letter advising it of the promulgation of the June 12 order. The letter concluded with the statement that "this Department has no alternative other than to instigate legal proceedings to enjoin you from making deliveries to the Veterans' Hospital at the prices submitted in your bid."

On June 14 the Administration opened the bids submitted in response to its invitation, and Sunshine was found to be the low bidder. Four days later Sunshine wrote the Administration asking that its bid be withdrawn owing to the aforementioned communication from the Oregon Milk Control Authority. On June 29 thereafter the Administration purported to award to Sunshine a supply contract in accordance with the terms of its bid. Parenthetically, it may be observed at this point that one of the requirements of the Administration was that the successful bidder furnish a performance bond. Sunshine furnished no bond. On the Administration's certification of award appears the notation "performance bond in case of Sunshine Dairy not attached due to the fact that the bid was below that stipulated by the Oregon Milk Control Board and the company is not permitted to furnish supplies under the contract."

Sunshine filled the monthly purchase order for July, 1946, its invoices for that month listing the unit prices in accordance with the price terms of its bid. On July 24, however, it advised the Administration that it would be unable to supply the latter with its fluid milk requirements after July 31. The communication stated that Sunshine had withdrawn its bid as of June 14, hence was under no contractual obligation to the Administration, and that the minimum prices established by the Oregon authorities prevented the sale of dairy products below the established minimum. The Administration at that time took the position that a contract was in effect, that a failure of Sunshine to continue deliveries would constitute a default and that Sunshine would be held liable for costs to the Administration in excess of the contract price occasioned by the pur-

chase of its needed requirements on the open market. Subsequently the Administration elsewhere filled its requirements during the remainder of the contract period at costs substantially in excess of the contract price, this excess sum being offset by the Administration against Sunshine's July invoices. A voucher for the small balance remaining was ultimately transmitted to Sunshine.

The present suit was brought by Sunshine to recover the sum unpaid on the July deliveries. The court concluded, among other things, that Sunshine had withdrawn its bid prior to the time of its acceptance, and awarded judgment for the amount prayed. Numerous questions raised and in part ruled on below in Sunshine's favor are discussed on the appeal, but we believe it necessary to consider only whether, under the circumstances here present, Sunshine's attempted revocation of its bid was effective. We think it was.

The government recognizes that under general principles of the common law of contracts an offeror may revoke his offer at any time prior to acceptance. See Restatement, Contracts, § 41. It is also conceded that the rule generally prevails even though the offeror has agreed to keep the offer open for a certain time. See Williston, Contracts, § 55 (1936 ed.). But, it is contended, these rules do not obtain in the case of public contracts. Here the bid form submitted by Sunshine imports an agreement on the bidder's part to perform if the bid be accepted within 30 calendar days from the date of its opening. Moreover, a paragraph of the instructions to bidders, appearing in Sunshine's bid, incorporated by reference U. S. Standard Form 22, 41 U.S.C.A. § 54.12. Paragraph 12 of Form 22, relating to withdrawal of bids, states:

> "Bids may be withdrawn on written or telegraphic request received from bidders prior to the time fixed for opening. Negligence on the part of the bidder in preparing the bid confers no right for the withdrawal of the bid after it has been opened."

It is said, correctly no doubt, that the purpose of this provision of the Standard Form is to prevent the perpetration of fraud against the government and to allow the latter a certain amount of time in which to evaluate bids after opening. We are told that strict adherence to the letter of the Form has been exacted by the courts; and the Court of Claims decision in Refining Associates v. United States, 1953, 109 F.Supp. 259, 124 Ct. Cl. 115, is cited and heavily relied on in support of the contention.

The decision in Refining Associates is important and interesting, but the language as well as the general spirit of the court's opinion would seem to support the position taken by Sunshine rather than that of the government. In that case the plaintiff, a corporation engaged in buying and selling oil lubricants, submitted a bid covering certain items to be delivered to the government f. o. b. the supplier's port of choice. As here, the invitation for bids incorporated by reference U. S. Standard Form 22. Plaintiff was the low bidder. Six days after the opening of bids and nine days before the expiration of the period reserved for considering them the plaintiff wired withdrawal of its bid on the ground that it was unable "because of circumstances beyond its control" to furnish certain of the required items. Subsequent to the bid's acceptance plaintiff wired that its revocation was due to strikes and impossibility of performance. It later sued to recover sums offset by the government against monies owing. The court, after reviewing numerous of its own holdings, denied recovery, saying at page 262 of 109 F.Supp. of the report: "There is no evidence that the strikes in any way affected plaintiff's ability to perform. These strikes had been in progress at least a month when plaintiff submitted its bid. In spite of this fact, plaintiff selected as his port of choice Los Angeles or San Francisco, where the strikes were going on. Plaintiff knew, or should have known, of the strikes at the time the bid was submitted. In the absence of evidence, plaintiff's contention that its rev-

ocation was due to the strikes is unjustified." Later on in the opinion the court remarked: "Where there is no mistake, unreasonable delay, or the like, there can be no injustice in holding the bidder to the conditions of the Invitation for Bids. 30 Op.Atty.Gen. 56, 64. If, on the other hand, the bidder has the right of withdrawal in all cases, innumerable frauds could be perpetrated against the United States by the parties engaged in the bidding."

The Administration points to the circumstance that in May of 1946 the Milk Control authority conducted a hearing to determine whether the current minimum prices should be changed, and it urges that Sunshine should have foreseen the action ultimately taken. However, there was no advance notice of the decision. The existing minimum price might have been left undisturbed, or the minimum raised or lowered. The record supports no inference of negligence on Sunshine's part in this respect; and it is significant that Sunshine promptly notified the Administration not only of the withdrawal of its bid but of the precise reason therefor. Due to no fault of its own Sunshine was faced with injunctive proceedings and with the possible imposition of penalties for violation of the regulation if it proceeded. The paragraph of the Standard Form heretofore quoted itself appears to contemplate circumstances short of negligence where the bidder may be justified in withdrawing his bid after opening.

It is argued that the Oregon minimum price regulations are not applicable to the Marquam Hill area over which, it is said, the United States has exclusive jurisdiction, and therefore state action against Sunshine could not successfully have been maintained. The opinion of the Supreme Court in Pacific Coast Dairy v. Department of Agriculture of California, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761, is cited on the jurisdictional point. That case involved the applicability of state minimum milk prices to the area known as Moffett Field. The opinion states 318 U.S. at page 294, 63 S.Ct. at page 630 that "the exclusive character of the jurisdiction of the United States on Moffet Field is conceded." In the present instance there is no such concession. On the contrary it is urged on Sunshine's part that exclusive federal jurisdiction over Marquam Hill had not been obtained or asserted by the United States; and the trial court found that neither the United States nor any of its agencies has accepted exclusive jurisdiction over the area.

We deem it unnecessary to consider or rule upon the point of jurisdiction, and our decision is not to be construed as doing so. But it is important to note that in the cognate case of United States v. Potter et al., Civil No. 2807 (unreported), decided by the District Court of the United States for the District of Oregon in 1946, it was held that the state minimum price regulations for dairy products are applicable to and controlling over the sale of milk for delivery at the Marquam Hill area, and that a contract for the sale of milk to Marquam Hill below the minimum fixed is illegal and unenforceable. The United States took no appeal from this holding. The fact that the decision was left unchallenged would seem to indicate that the point was considered debatable. Uncertainty in this respect afforded added reason for Sunshine's revocation of its bid.

Bearing in mind all circumstances, we feel that a gross injustice would be perpetrated if Sunshine's revocation of its bid were to be held ineffective, and we are further of the opinion that revocation was warranted by the terms of the Standard Form itself.

Affirmed.