**UNITED STEELWORKERS OF AMERICA, AFL–CIO, Petitioner-Appellee,**

v.

**BELL FOUNDRY COMPANY, Respondent-Appellant.**

**UNITED STEELWORKERS OF AMERICA, AFL–CIO, Petitioner-Appellant,**

v.

**BELL FOUNDRY COMPANY, Respondent-Appellee.**

Nos. 78–2083, 78–2315.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1980.

Decided Aug. 25, 1980.

James G. Johnson, Hill, Farrer & Burrill, Los Angeles, Cal., for Bell Foundry Co.

Daniel McIntyre, Pittsburgh, Pa., for United Steelworkers of America, AFL–CIO.

Before SNEED, SCHROEDER and ALARCON, Circuit Judges.

SCHROEDER, Circuit Judge:

On November 30, 1977, Bell Foundry (the employer) mailed discharge notices to four striking employees. This occurred several months after the expiration of Bell's previous Collective Bargaining Agreement with United Steelworkers (the union) and shortly before a new agreement was signed. The union instituted this action to compel arbi-

tration of the discharges. The district court held that the discharges were not arbitrable under the new contract, and only that portion of the judgment is now at issue.[1] We reverse because at the time the discharges became effective the second contract had come into being.

Following expiration of the old contract in August, 1977, and during the subsequent strike by the union, the union and the employer continued negotiations for a new contract. On November 21, the employer sent to the union a proposal, which stated that it would remain open until December 1. On November 23, the employer sent a clarification of one provision of the offer unrelated to any arbitration provisions at issue here, and granted the union's request that the offer remain open for a few more days.[2] On December 1, the union accepted the offer, making no mention of the November 23 clarification. On December 5, after the employer had called the clarification to the union's attention, the union accepted it, noting that the clarification was in accord with the union's original interpre-

tation of the provision.[3] In the meantime, however, on November 30, the employer mailed discharge notices to four of the striking employees.

The new contract negotiated by the parties contained an express provision relating to the arbitrability of discharges. It provided that discharges were to be for good cause, and that all discharges after the contract's effective date were to be subject to arbitration. The central question before us is therefore whether there was a contract at the time of the discharges. The union contends that the contract was formed on December 1 with its original acceptance of the offer. The employer maintains that the clarification operated as a revocation of the original offer and that the contract was not formed until December 5 when the union formally accepted the clarification.

We agree initially with the employer's position that the contract formation issue is governed by general principles of contract law and not by the Uniform Commercial Code. *See Teamsters Local 524 v. Billington*, 402 F.2d 510 (9th Cir. 1968); *Lozano*

1. In the trial court the union sought to arbitrate under both the expired contract and the second contract. The district court ordered all disputed questions under the first contract to proceed to arbitration. That order was not stayed. The arbitrators found that the discharges were not arbitrable under the first contract. The parties now agree that all questions raised by Bell Foundry in its appeal challenging the order compelling arbitration are moot. The only questions before us were those raised by the union's cross appeal challenging denial of arbitration under the second contract.

2. The employer's November 23 letter read as follows:

Dear Mr. Sabatino:

The written offer dated November 21, 1977, as sent to you by Al Caplan omitted one phrase which should have been included and therefore we are clarifying the offer in accordance with our intent by slightly changing the first sentence of paragraph 9 to read as follows;
Quote: [sic] "Present strikers shall be recalled by senority [sic] within each classification as needed and as openings occur."
In order to accomodate [sic] your request for a couple more days to consider this offer,

we shall keep the offer open until December 5, 1977.

Very truly yours,

/s/ Edward W. Horne
Vice President

3. The union's December 5 letter read as follows:

Dear Mr. Caplan:

Confirming our discussion on December 1, 1977, regarding the above Agreement, and the Company's letter dated November 21, 1977, clarifying the recall of strikers, please be advised that the Union hereby accepts such clarification and agrees that present strikers shall be recalled by seniority within each classification as needed, and as openings occur.
I might add that the Union had interpreted the provision in the same manner when the above Agreement was presented to the members for ratification, and I foresee no problem with the matter.

Very truly yours,

/s/ Albert Sabatino
Sub-District Director

*Enterprises v. NLRB,* 327 F.2d 814 (9th Cir. 1964); *F. W. Means & Co. v. NLRB,* 377 F.2d 683 (7th Cir. 1967). The principle laid down in § 2–205 of the Uniform Commercial Code providing for irrevocability of firm offers is therefore not applicable. Under the traditional rule the November 21 offer was revocable notwithstanding the promise to keep it open. *See United States v. Sunshine Dairy, Inc.,* 215 F.2d 879, 881 (9th Cir. 1954). We further agree with the statement by the employer that under traditional rules governing the formation of contracts, a modification of an offer operates as a revocation of that offer. *See* I Corbin on Contracts § 39, at 164 (1963 & Supp. 1971); 1 Williston on Contracts § 55, at 178 (3d ed. 1957 & Supp. 1979); Restatement (Second) of Contracts § 41 (Tent. Draft Nos. 1–7 1973).

■ The issue then becomes whether the employer is correct in arguing that the November 23 clarification of the terms of the offer operated as a revocation of that offer, thereby nullifying the effect of the December 1 acceptance by the union. Nothing in the November 23 communication expressly indicates that the clarification was intended as a change in the terms of the original offer. In fact, the letter indicates that the clarification was simply to correct an omission of language and that it made no substantive change in the terms. The letter clearly contemplates that the November 21 offer is still in effect. Moreover, in the union's acceptance of the clarification the union stated that the clarification was in accord with its original understanding of the offer. Thus there can be no question that the parties came to a "meeting of the minds" on December 1 as to all of the operative terms of the contract. All that remained was a detail giving greater precision to the expression of one of the terms.

Although the black letter rule of law is that any modification or change in an offer operates as a revocation, there is a dearth of case law applying that principle. The employer cites no case which so holds. Our own research has uncovered only one, *Travis v. Nederland Life Insurance Co.,* 104 F. 486 (8th Cir. 1900). In *Travis,* however, the offeror's modification was a substantial one: Travis modified the original offer to purchase an insurance policy by making the offer contingent on being employed by the insurance company. There appears to be no case holding that a refinement of language such as that involved here operates as a revocation of an offer, and we are offered no practical justification for so holding. The parties in this case in fact were in full agreement on the contract terms on December 1, and the law should recognize the existence of a contract on that date. We therefore hold that the contract came into existence on December 1.

■ The employer also argues that the discharges became effective on the date that they were mailed, November 30, and that therefore even if a contract came into effect on December 1, the discharges were prior to the contract's effective date. The contract itself is silent as to whether the time of discharge means the time that the notices are mailed or the time that they are received. The short five-day period given for filing of a grievance following discharge gives credence to the union's argument that the discharge should be effective when the notice is received. Both sides rely on Cal. Labor Code § 2922 which provides that "an employment, having no specified term, may be terminated at the will of either party on notice to the other," but neither cites any authority dealing with when a termination under section 2922 becomes effective. In analogous situations the general rule is that where legal consequences are effective upon notice, the notice must be received in fact and not merely mailed. *See, e.g.,* IA Corbin on Contracts, *supra,* § 264, at 521 (formation of option contracts). This Court has held that an employer's termination of an employee will not bar that employee's participation in a union representation election until the employee receives notice of the termination. *NLRB v. Pacific Gamble Robinson Co.,* 438 F.2d 112, 113 (9th Cir. 1971). We see no reason to apply a different rule in this case. We therefore hold that the discharges did not take effect on

November 30 when the notices were mailed and therefore became effective after the contract was formed. The judgment of the district court as to the arbitrability under the new contract is reversed and the matter is remanded with instructions to enter judgment compelling arbitration.

SNEED, Circuit Judge, dissenting:

I respectfully dissent.

The district court in ordering arbitration under the old contract explicitly indicated that he was deciding only one legal issue, viz., the effective date of the second contract. II. R.T. 8. In holding that the effective date was December 5, 1977, the district court said ". . . the acceptance was not of the precise offer made and the contract did not arise because the offeror made clear that it was not going to accept the different acceptance and insisted on precise acceptance of its second and modified offer. And the precise acceptance of the second and modified offer was not forthcoming until December 5th; which thus, in my view, would be the effective date of the second contract." *Id.* at 11. In my opinion the district court is correct. A recital of basic contract doctrines is not necessary to support this conclusion. It is enough to observe that selecting the time at which from the chrysalis of negotiations emerges a legally binding contract evades scientifically precise determination, although all admit it must be guided by the manifested intent of the parties. I cannot say the majority is wholly wrong; I simply think the district court was more nearly right. In any event, the district court had a greater exposure to the facts than has this court. For this reason we should be reluctant to overturn its holding.