DWIGHT E. ROGERS, ADMINISTRATOR, *vs.* THE CHARTER OAK
LIFE INSURANCE COMPANY.

An agent of the defendants, a life insurance company, casually meeting *C* proposed to him to get his life insured with the defendants. *C* replied that he was on an outward trip from New York, to be gone ten or twelve weeks, and could not attend to it at that time. The agent pressed the matter, and finally *C* signed an application for insurance and submitted to a medical examination, and it was agreed that when the policy was issued by the company and received by the agent the latter should forward it by mail to *C*'s address in New York, who, if it was found to be as agreed, was to send the premium, or, if not, to return the policy; the policy to take effect when the premium was paid. Afterwards the agent, having received the policy from the company, mailed it to *C* at New York, the envelope being marked "return in ten days if not called for." It was returned uncalled-for. The agent then sent the policy to another place where he supposed *C* might be, but *C* had died two days before it was sent. Held to be an inchoate and not a complete contract of insurance, and that no liability attached under it.

And held that a nonsuit was properly granted in the case.

ASSUMPSIT on a policy of life insurance ; brought to the
Superior Court in Hartford County, and tried to the jury on
the general issue before *Granger, J.*

On the trial the plaintiff laid in a policy of insurance, duly
executed by the company and countersigned by D. A. Keyes
as agent, on the life of Charles B. Crofut, of whose estate the
plaintiff was administrator, for the sum of $2,000. He also

proved the death of the insured. The policy contained the following provisions :—" But the same shall not be binding on the company until countersigned by D. A. Keyes, of Norfolk, Conn., and the advance premium and deposit paid in the life time of said insured, as per first premium receipt accompanying each policy." " The possession of this policy alone by the parties in benefit is not evidence that insurance has been finally effected on the life of the person named therein, as the insurance is not completed until the first premium and deposit are actually paid, and the first premium receipt, properly countersigned by the agent named therein, delivered with the policy."

The plaintiff also introduced the deposition of Keyes, the agent of the company, which was as follows :—

" I, Daniel A. Keyes, of Norfolk, in the state of Connecticut, being duly sworn, do testify and say : I am agent for the Charter Oak Life Insurance Company of Hartford, Connecticut. I commenced in October, 1871, and have acted as such agent ever since. I countersigned policy 60,285 on the life of Charles B. Crofut, July 8th, 1872. I first met Crofut in Wolcottville, Conn., about the middle of June, 1872. We were both staying at the Allen House there. He came there and registered his name. We got acquainted on the porch of the hotel, and then went and played billiards together. He told me he was a drummer for a house in New York, and was selling stoves. I introduced the subject of life insurance, and first proposed to him to have his life insured. I presume we talked the matter over for an hour and a half. Soon after we began the conversation we came back to the hotel and talked in the office. He was averse to having his life insured at that time. He said he was on his outward trip, and was not ready, but he thought life insurance was a good thing. I do not know as he gave any reason why he was not ready, but I judged that he did not have the money. I urged him to have his life insured, and during this conversation I told him that we had a temporary or agent's policy, which would bind the insurance from the date of the medical examination. I showed such a policy and explained to him the danger that

he was in in not having his life insured from that date, and tried to have him take it. I told him this policy required the money down. I urged this upon him, as I did not expect to see him again. I told him that this policy would bind the insurance from the date of examination, subject to the approval of the company, but if he did not take this his insurance would not take effect till he got his other policy. I said this because he was going to be gone so long. I told him I would send the other policy to New York to his address. I told him that if he would take an agent's policy, and pay half the money down, I would advance the rest; but he declined it, and said he would take his chances till he returned. The policy to be sent to New York was the policy issued by the company, and not an agent's policy. I told him when he got the policy to look it over, and if not as agreed to return it. I took his application for life insurance that day, June 14, 1872. When I received the policy No. 60,285, I sent it to New York according to his directions, all except the premium receipt. The policy was returned to me uncalled for. I had marked on the outside of the envelope, " Return in ten days if not called for." I then sent the policy to Derby, the residence of his father, not knowing but that he had got through in New York, and might be at home. I enclosed it in a letter, dated August 15, 1872, directed to D. K. Crofut, Derby, supposing him to be Charles B. Crofut's father. A few days after I received a letter from Dwight E. Rogers, inquiring in regard to insurance on the life of C. B. Crofut. I replied to that letter, informing Mr. Rogers that I had insured the life of Mr. Crofut, and that if Crofut would sign the enclosed health certificate, and send the premium, I would forward the premium receipt. I received an answer from Mr. Rogers, informing me that Crofut was dead, and saying we could make it of mutual benefit to meet and have a consultation. I did not meet him. I returned the premium receipt to the company, and reported the policy not taken. I make reports to the company monthly. I cannot say whether I made the report in August or September that the policy was not taken by Mr. Crofut. Mr. Crofut did not pay me any

premium. He did not give any reason why he did not then pay the premium. I had a talk with him as to when he was to pay the premium. I told him he was to pay it when he got his policy. I told him when he got the policy to look it over, and, if it was just as I agreed it should be, send me the premium; and if not, to return the policy. He told me when he got back, if the policy was as we agreed, he would send me the premium. I do not know as he gave me any reason why he did not want to pay that day. I only inferred it because he was on his outward trip; he said he was not ready to insure that day. · My great object was to get the money out of him that day, but if I could not get it that day, to get it some time. He told me he should probably be away sixty or ninety days before his return to New York. He told me he resided, and had his place of business, in New York. The first premium he was to pay was $37.35. I told him how much it was. I did not show him the policy or any copy of the policy which he was to receive. I did not tell him the policy would take effect when he received it, but when he paid for it. I do not remember as he made any answer to that. I settle my balances once a month with the company. I did not at any time credit the company with the first premium due on this policy. I agreed with Mr. Crofut that he should pay the first premium when he received the policy. I understood that he was not to receive the policy until his return to New York. I have a written authority from the company to act as their agent. I am in the habit of letting policies go out of my hands without obtaining the money when I give a man time on his payment and take his note, but always retain the premium receipt. I am in the habit of giving time on payments in this way. Not a word was said between me and Crofut about taking his note. I do not take a man's note unless I know him. The insurance takes effect from the date of the note. My instructions are, in no case to deliver a policy without so much cash and the balance in notes from thirty to sixty days, when I know the parties to be responsible. I frequently deliver policies without any cash, giving credit by taking a note for the whole premium, where

I know the parties. I do not know as the company are aware of this practice of mine."

*Cross-examined.* " I did not mean when I said that Crofut was to pay the first premium when he received the policy, that I gave him credit or time for the payment of the premium. I told Crofut this much, that the policy was not binding until the premium was paid. I never have, to my recollection, given a person time to pay his premium, without taking his note. I did not, in this case, agree to provide for any part of the premium; nor did I waive the payment of it, or any part of it. This policy was in my hands on the 15th day of August, 1872, and had so been in my possession since the 9th of the same month. The premium receipt on that policy was never out of my hands until returned to the company as above mentioned. The money due on such receipt was never paid or tendered to me, by any person, during the life-time of Crofut. I do not remember Crofut's New York address, but I sent the policy to the address he gave me. I began about 9 o'clock in the evening my conversation with Mr. Crofut, and finished about 11 o'clock of the same evening. He was examined that evening by Dr. T. S. Hanchett, the medical examiner of the Charter Oak Life Insurance Company. I was present at the examination. I do not remember ever seeing Crofut since; and further this deponent says not."

The plaintiff also introduced the following letters, referred to in the foregoing deposition :—

" Norfolk, Conn., August 15, 1872. D. K. Crofut, Esq., Derby : Dear Sir. Enclosed find insurance policy. I suppose this is for your son, but am not sure. I insured him sometime ago and forgot his address in New York; he was selling stoves for some house there. If you will send this to him I will be much obliged, and it will save me the trouble to find him. The amount of premium due is $37$\frac{35}{100}$. Yours truly,
D. A. Keyes."

It appeared by the plaintiff's proofs that Charles B. Crofut had died on the 13th day of August, 1872, two days before the foregoing letter was written.

" Derby, Conn., Aug. 20, '72.    Mr. D. A. Keyes : Dear Sir.
A life insurance policy for Charles B. Crofut, traveling agent,
has been handed to me by D. K. Crofut.    I am a brother-in-
law of C. B. Crofut and attend to his affairs.    Did you insure
him at your place of business, and what agreement was made
in regard to the time of payment of the $37.35 ?    Yours
truly,                                    DWIGHT E. ROGERS."

" Norfolk, Conn., Aug. 26th, 1872.    Dwight E. Rogers,
Esq., Derby : Dear Sir.    Your favor of 20th inst., to hand.
C. B. Crofut was insured by me in the town of Wolcottville,
and was to pay the $37.35 on receipt of policy, although he
informed me that he might not be at home in two months.
The payment is now past due, and if you will sign the en-
closed certificate, or have him sign it, either, and remit the
$37$\frac{35}{100}$ for him, I will remember it as a favor.    I have lost
his New York address.    Yours truly,    D. A. KEYES."

The plaintiff also introduced the deposition of Dr. Hanchett
the medical examiner, as to a conversation between Keyes and
Crofut at his office, which, however, added nothing material to
the evidence.    And with this evidence the plaintiff rested
his case.

The defendants thereupon moved for a nonsuit, which was
granted by the court, and on a motion to set aside the non-
suit being denied, the plaintiff brought the record before this
court by a motion in error.

*Perkins* and *Stanton*, for the plaintiff.

1. The plaintiff, by producing upon the trial the policy of
insurance, duly executed by the defendants, and also the
proper proofs of the death of the assured, with evidence that
the same were furnished to the defendants within the required
time, also the plaintiff's appointment as administrator, estab-
lished a *primâ facie* case.

2. The delivery of the policy, without requiring the pay-
ment of the premium, raises a presumption that a credit was
intended.    Angell on Fire & Life Ins., § 343 ; 1 Bigelow's
Ins. Reps., 107, note ; *Brooklyn Life Ins. Co.* v. *Miller*, 12
Wall., 303 ; *Goit* v. *National Protection Ins. Co.*, 25 Barb.,

189. And the above is true although the policy contains a provision that the insurance shall not take effect before the premium is actually paid. *Sheldon* v. *Atlantic Fire & Marine Ins. Co.*, 26 N. York, 460 ; *Bragdon* v. *Appleton Ins. Co.*, 42 Maine, 259 ; *First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 18 Barb., 69.

3. The insurance took effect upon the mailing of the policy to the assured. *Tayloe* v. *Merchants' Fire Ins. Co.*, 9 How., 360. ·The mailing the policy was delivery in fact. According to the deposition of the agent the policy would have reached the hands of the assured, but for the mistake of the agent in marking it to be returned within ten days. The fact that he again forwarded it to the relatives of Crofut affords the strongest possible evidence of his intention to deliver it.

4. A nonsuit is not properly granted except in a case where, upon the facts proved or admitted, the law gives no right of recovery, or where a *primâ facie* case cannot be extracted from any part of the plaintiff's evidence. All the reported cases of nonsuit sustained in this state, fall under the first branch of this proposition. *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 Conn., 40 ; *Parker* v. *Middlebrook*, id., 207 ; *Naugatuck R. R. Co.* v. *Waterbury Button Co.*, id., 468 ; *Treadway* v. *Hamilton Mut. Ins. Co.*, 29 id., 68 ; *Newell* v. *Woodruff*, 30 id., 492. The purpose of the statute authorizing nonsuits was not to permit the presiding judge to decide as to the credibility of witnesses or the weight of testimony, or to balance one piece of evidence against another. That is solely the office of the jury. The principal points as to which the parties were at issue were, whether the payment of the premium had been waived, and whether insurance had been effected upon the life of Crofut as alleged. The question of waiver is one of fact and of intention. The court is not to decide whether a waiver is to be inferred from letters written by a party ; that question must be left to the jury. · *Fitch* v. *Woodruff & Beach Iron Works*, 29 Conn., 85, 91. Where there is any competent evidence upon the questions at issue, upon which the jury may found a verdict, the question should be submitted to the jury, and it is error to grant a nonsuit.

*Wilkinson* v. *Scott*, 17 Mass., 249 ; *Thornton* v. *Gibson*, 43 Geo., 395 ; *Brooks* v. *Somerville*, 106 Mass., 274 ; *Huddleston* v. *Lowell Machine Shop*, id., 282 ; *Hickman* v. *Jones*, 9 Wall., 197 ; *Ellis* v. *Ohio Life & Trust Co.*, 4 Ohio S. R., 645 ; *Ernst* v. *Hudson River R. R. Co.*, 35 N. York, 25. A non-suit is not to be granted if any part of the evidence will support a verdict, and the court should adopt that view of the evidence most favorable to the plaintiff. *Imhoff* v. *Chicago & Milwaukee R. R. Co.*, 22 Wis., 681 ; *Sheridan* v. *Brooklyn City & Newtown R. R. Co.*, 36 N. York, 39 ; *Page* v. *Packer*, 43 N. Hamp., 363, 366 ; *Langhoff* v. *Milwaukee & Prairie du Chien R. R. Co.*, 19 Wis., 497.

*Hubbard*, for the defendants.

FOSTER, J. The motion for a non-suit in this case we think was properly allowed ; we see no good cause for setting it aside.

We reach this result without deciding several of the questions which have been elaborately argued at the bar. As the evidence offered by the plaintiff was wholly in depositions, and as they are made part of the record, the question is presented to us precisely as it was presented to the court below. Taking the whole evidence together, we think it appears that no contract of insurance was ever completed and consummated between the plaintiff's intestate and the defendants. Our attention therefore will be confined principally to this one question. Whether the answers and declarations contained in the application are warranties or representations, and whether the burden of proving them true does or not, in the first instance, devolve on the plaintiff, it becomes unnecessary to discuss or decide. There is much nice learning involved in the general subject, and it has been a most fruitful source of litigation for more than a century. Highly distinguished legal tribunals still continue to entertain widely different views regarding it, as the recent cases of *Fitch* v. *American Popular Life Ins. Co.*, 2 N. York Sup. Ct. Rep., 247, and *Swicks* v. *Home Ins. Co.*, 2 Dill. C. C. Rep., 166, not to mention

others, very clearly show. The subject is by no means a *res nova* in this court. It has had full and frequent consideration. *Wood* v. *Hartford Fire Ins. Co.*, 13 Conn., 533 ; *Glendale Woolen Co.* v. *Protection Ins. Co.*, 21 Conn., 19 ; *Kelsey* v. *Universal Life Ins. Co.*, 35 Conn., 225.

But as we have already suggested, we propose to confine ourselves mainly to considering the question whether or not the evidence shows that a contract of insurance was made and completed between the parties.

It appears from the record that Daniel A. Keyes, an agent of the defendants, was living at the Allen House, a hotel in Wolcottville, in this state, in the month of June, 1872. Charles B. Crofut, whose administrator the plaintiff is, came to the hotel and registered his name as a guest about the 14th of June, 1872. He immediately formed a casual acquaintance with Keyes, whom he told that he, Crofut, was a "drummer for a house in New York," that he was a traveling agent to sell stoves. Keyes proposed to him to have his life insured, but he said he was on his outward trip, was not ready, and was averse to doing it at that time, though he thought life insurance was a good thing. Keyes urged the matter, and told him that they had a temporary or agent's policy, that would bind the insurance from the date of the medical examination, subject to the approval of the company ; but if he did not take that, his insurance would not take effect till he got his other policy and paid the premium. The agent's policy required the payment of the premium in hand, and though Keyes tried to induce Crofut to take one, and offered to advance half the money necessary if he would pay the other half, Crofut declined. On that day, however, the 14th of June, 1872, Keyes took from Crofut his application for a life insurance, and had him subjected to an examination by a medical gentleman. Crofut expected to be absent from New York for sixty or ninety days. When the policy should be received by Keyes from the company, it was agreed between him and Crofut, that Keyes should forward it to his, Crofut's, address, in New York. If it was found by Crofut to be as agreed, he was to send the premium—if not,

he was to return the policy. The policy was to take effect when the premium was paid.

Some time after this, precisely how long does not appear, Keyes forwarded the policy to New York, the envelope being marked, " return in ten days if not called for." It was returned uncalled for. Keyes then sent the policy to Derby, in this state, addressed to D. K. Crofut, supposing him to be the father of Charles B. Crofut, who, he thought, might have left New York and returned home. This letter is dated August 15th, 1872, and was answered by the present plaintiff under date of August 20th. Keyes replied to that letter under date of August 26th, and that closed the correspondence.

It further appears that Charles B. Crofut died in New York on the 13th of August, 1872. At that time the policy of insurance now in question was in the hands of Keyes, the agent of the defendants, having been sent to New York, but returned uncalled for.

We regard this as an inchoate, not a complete contract. The minds of the parties had not met. The sending of the policy was an offer on the part of the defendants, subject to the approval of the party named in the instrument, and when acceded to by him, and notice thereof given by payment of the premium, this offer would mature and become a complete and effectual contract. Until the terms of an agreement have been assented to by both parties, the negotiation remains open, no obligation is imposed. Had Charles B. Crofut been in New York when this policy was forwarded there, and had he exercised his option by declining to receive it, and so returned it to the agent as unsatisfactory, we think it very clear that the company could not have maintained an action against him to recover the premium. True, the policy never came to his hands, he never rejected it, as he might or might not have done, but he never assented to it, as he must have done in order to make a complete and perfect contract. We cannot assent to it for him, without doing that which he did not decide to do for himself, and the law confides no such power to a court of justice.

The possession of the policy by the plaintiff, which might under other circumstances be of importance, is fully explained away by the fact that it was in the hands of the defendant's agent on the 13th of August, 1872, when the said Crofut died, having never been delivered or accepted, and that it passed out of the agent's hands without notice or knowledge of said Crofut's death.

That the agent of these defendants was very eager and made very strenuous exertions to induce the deceased to take a policy of insurance on his life, is abundantly clear. That the deceased declined to do so is equally clear. The policy was forwarded to him, but failed to reach him, and was returned to the agent, in whose hands it remained till after C. B. Crofut's death. Hence, we say, that there was no contract of insurance subsisting between the plaintiff's intestate and the defendants at the time of the death of the intestate.

It is obviously unnecessary, in this aspect of the case, to examine any other questions which have been discussed.

There is no error in the judgment complained of. The nonsuit should not be set aside.

In this opinion the other judges concurred.