## PAINE *v*. PACIFIC MUT. LIFE INS. CO.

*(Circuit Court of Appeals, Eighth Circuit.* August 9, 1892.)

### No. 119.

1. LIFE INSURANCE—APPLICATION—PRESUMPTIONS.

Where an application for life insurance has been made to an insurance solicitor, but the applicant dies before a policy is issued, and none in fact is ever issued, the presumption is, that there was no contract of insurance, and no purpose to contract, otherwise than by a policy made and delivered upon simultaneous payment of the premium.

2. SAME.

This presumption is rendered conclusive where the application provides that it is agreed and understood that only the home office of the company has authority to determine whether a policy shall issue on the application, and that there shall be no contract until a policy is issued and delivered and the first premium paid, while the applicant is living, and in the same condition of health described in the application.

3. SAME—POWERS OF LOCAL AGENT.

In view of such provisions, there is no room for the application of the rule that the powers of a local agent of a corporation are sometimes measured, not by his actual, but by his apparent, authority; and it is immaterial that such agent agrees to take, or does take, a portion of the first premium in trade from the applicant's store.

4. SAME—DEATH OF APPLICANT BEFORE ACCEPTANCE.

The death of the applicant before his application reaches the home office revokes the offer to become insured, as well as destroys the subject of the insurance, and renders the making of the proposed contract impossible.

5. SAME—ACCEPTANCE—NOTICE.

The approval of the application by the company's medical director before receiving notice of the applicant's death, even if it amounts to a determination to accept the same, does not complete the contract, when such acceptance is never communicated to the applicant's personal representative.

Appeal from the Circuit Court of the United States for the District of Nebraska.

In Equity. Suit by Ira T. Paine, as administrator of the estate of Forrest L. Kendall, against the Pacific Mutual Life Insurance Company of California. Decree dismissing the bill. Complainant appeals. Affirmed.

Statement by SANBORN, Circuit Judge:

This was an appeal from a decree of the circuit court for the district of Nebraska, dismissing the bill of appellant to enforce specific performance of a contract which the bill alleged the appellee made with Forrest L. Kendall on May 29, 1890, to insure his life for $10,000, and to recover of the appellee for his death that amount, less a few dollars of unpaid premium. The answer denied that such a contract was made, and the court below, after hearing the cause on the pleadings and proofs, dismissed the bill. From the pleadings and proofs the following facts appear:

The complainant was the administrator of the estate of Forrest L. Kendall, and the defendant was a corporation organized under the laws of California, and authorized to insure lives in the state of Nebraska. Its home office and principal place of business was in San Francisco, Cal. One Limback was the agent of the defendant at Grand Island, in

Nebraska, to solicit applications and collect premiums, but without authority to make, or to agree to make, contracts of insurance for the defendant. On May 29, 1890, he solicited and obtained from Kendall his application to the defendant, in writing and print, for a policy of insurance on his life. This application was signed by Kendall, and contained the following stipulations:

"Do you understand and agree that only the officers of the home office have authority to determine whether or not a policy shall issue on any application, and that they act only on the statements and representations in the application, and that no statements, representations, or information made or given by or to the person soliciting or taking this application for a policy, or to any other person, shall be binding on the company, or in any manner affect its rights, unless such statements, representations, or information be reduced to writing, and presented to the officers of the company at the home office in this application? Yes. * * * And it is agreed that there shall be no contract of insurance until a policy shall have been issued and delivered by the said company, and the first premium thereon paid, while the person proposed for insurance is living and in the same condition of health described in this application; and that, if said policy be issued, the declarations, agreements, and warranties herein contained shall constitute a part of the contract, and the contract of insurance, when made, shall be held and construed at all times and places to have been made in the city of San Francisco, in the state of California; * * * policy to be dated the first day of June, 1890. (All policies of the company are issued as of the first day of each month.) * * * It is agreed that the foregoing statements and answers, as well as all others made or to be made to the company's medical examiner or soliciting agent, are warranted to be true, and are offered to the company as a consideration of the contract, which shall not take effect until the first premium shall have been paid during the life and good health of the person herein proposed for insurance."

When he obtained the application, the agent, Limback, agreed to take $10 of the first quarterly premium in trade at Kendall's store, and after Kendall's death he did get from that store, on this account, a box of cigars. Kendall agreed to pay the balance of this premium, $59.90, when the policy was delivered. The application was forwarded to the home office. On June 3, 1890, Kendall was drowned. On June 6, 1890, the application first reached the defendant's home office, and on June 7, 1890, it was examined and approved by its medical director, in ignorance of Kendall's death. On June 9, 1890, defendant learned of his death, and refused to issue a policy. On June 30, 1890, complainant tendered $59.90 to Limback in payment of the first quarterly premium, but he refused to receive it, and offered to pay $10 to complainant, which he refused to accept. This suit was then brought.

R. W. Breckenridge and O. A. Abbott, for appellant.

Charles O. Whedon, for appellee.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The court below found that the defendant company never made any contract to insure the life of Kendall, and on this ground dismissed this bill. The complainant assigns this finding and decree as error, and the only question to be considered is whether or not the proofs fairly established such a contract, for, if they did, the bill should not have been dismissed, but a decree should have been rendered for the complainant for the relief he sought. On May 29, 1890, Kendall made his written application to defendant for insurance, and caused it to be forwarded to its home office, where alone it could be accepted or rejected. On June 3, 1890, he was drowned. On June 6, 1890, the defendant first received the application at its home office. On June 7, 1890, its medical director, in ignorance of Kendall's death, approved the application. Kendall knew the application could be accepted and a contract of insurance made by the officers of defendant at its home office only.

The material facts in this case are undisputed, and the evidence calls for no comment. There is neither doubt nor difficulty as to the rules of law applicable to these facts. To discuss them would be futile, for they are not debatable; they are founded in reason, settled by long lines of decisions, and conclusively demonstrate that there could have been no contract by this defendant, under the facts of this case, to insure the life of the decedent. Ample reason for this conclusion will appear from the bare statement of some of these rules. As no policy was issued, and the custom of insurance companies is to issue a policy when a contract of life insurance is made, the presumption is that on May 29, 1890, when the application was signed, there were negotiations, but no contract, and no purpose to contract otherwise than by a policy made and delivered upon simultaneous payment of premium. *Heiman v. Insurance Co.*, 17 Minn. 153, 157, (Gil. 127;) *Markey v. Insurance Co.*, 103 Mass. 92; *Insurance Co. v. Kennedy*, 6 Bush, 450.

The provisions of the application that the decedent understood and agreed that only the officers of the home office of the defendant company had authority to determine whether or not a policy should issue on any application, that he agreed that there should be no contract of insurance until a policy should have been issued and delivered by the company, and the first premium thereon paid, while he was living and in the same condition of health described in the application, and that the statements in the application were true, and were offered to the company as a consideration for the contract, which should not take effect until the first premium should have been paid during his life and good health, make conclusive this legal presumption, and establish the fact that by the transaction of May 29, 1890, and the delivery of the application to the local agent of the company, the decedent merely made a proposal to become insured by the defendant company, which could not become a contract until it was accepted by the officers of the defendant at the home office in San Francisco. *Tayloe v. Insurance Co.*, 9 How. 390; *Insurance Co. v. Young's Adm'r*, 23 Wall. 85, 106; *Insurance Co. v. Ewing*, 92 U. S. 377, 381.

There is no room here for the application of the rule that as to .third persons the power of the local agent of a corporation is sometimes measured, not by his actual, but by his apparent, authority, because the decedent in his application stated and agreed that he knew that no one but the officers at the home office could accept his application or make a contract to insure him. That the application provided that the date of the policy should be June 1, 1890, when it also provided that all policies should be dated the first of some month, is immaterial, in view of the fact that the decedent twice expressly stipulated in this application that the contract of insurance should not take effect until the first premium was paid and the policy delivered during the life and good health of the applicant. That the local agent agreed to take, or did take, $10 of the first premium of $69.90 in trade from decedent's store in no way modified or affected the positive and clearly expressed terms of this proposal relative to ·the time when, and the conditions upon which, the contract should take effect. ⸱

There is no room for the application of the rule that, where the prepayment of the premium is a condition precedent to the delivery of a policy, an agent authorized to collect it may sometimes give credit, and thereby waive the condition, because the time never came when the premium was due or payable, and no credit was given, no waiver made. The death of Kendall on June 3, 1890, before the application had reached defendant's home office, revoked his offer to become insured by the defendant company, which was contained in this application, and rendered the making of the proposed contract of insurance impossible. An offer is revoked by the death of the proposer, or by the death of the party ·to whom the offer is made before acceptance. "The continuance of an offer is in the nature of its constant repetition, which necessarily requires some one capable of making a repetition. Obviously, this can no more be done by a dead man than a contract can in the first instance be made by a dead man." *Pratt* v. *Trustees*, 93 Ill. 475, 479; *Dickinson* v. *Dodds*, L. R. 2 Ch. Div. 463, 475; *Phipps* v. *Jones*, 20 Pa. St. 260, 264; *Wallace* v. *Townsend*, 43 Ohio St. 537, 3 N. E. Rep. 601. ⸱⸱

Conceding that the defendant could and did determine to accept the application on June 7, 1890, one day after its receipt and four days after the death of Kendall, still such acceptance and the contract, if so made, were void, because the life that was the subject-matter of the contract was not then in. existence. The first party to this proposed contract was Kendall; the second, the defendant; the subject-matter of the contract, Kendall's life. The contract was not made, in any event, before June 7th, when defendant's medical director approved the application, and at that time the first party to it was dead, and its subject-matter did not exist. Neither party would have knowingly made an insurance contract regarding a life that was not in being. Parties make no contract where the · thing which they supposed to exist, and the existence of .which·was indispensable to the making of their contract, had no existence. *Franklin* v. *Long*, 7 Gill. & J. 407, 419; *Gibson* v. *Pelkie*, 37 Mich. 380; *Strick-*

*land* v. *Turner*, 7 Exch. 208, 219; *Couturier* v. *Hastie*, 5 H. L. Cas. 673, 682; *Clifford* v. *Watts*, L. R. 5 C. P. 577; *Hazard* v. *Insurance Co.*, 1 Sum. 218, 226; *Insurance Co.* v. *Ewing*, 92 U. S. 381.

Conceding that the action of the medical director in approving the application on June 7th, in ignorance of the applicant's death, was a determination to accept the application by the defendant, still there was no contract, because no notice of the acceptance of the application was in any way communicated to the applicant or his representatives. The acceptance of an offer not communicated to the proposer does not make a contract. *Jenness* v. *Iron Co.*, 53 Me. 20, 23; *McCulloch* v. *Insurance Co.*, 1 Pick. 278; *Thayer* v. *Insurance Co.*, 10 Pick. 325, 331; *Borland* v. *Guffey*, 1 Grant Cas. 394; *Beckwith* v. *Cheever*, 21 N. H. 41, 44; *Duncan* v. *Heller*, 13 S. C. 94, 96; *White* v. *Corlies*, 46 N. Y. 467.

Conceding that the application was accepted on June 7, 1890, by the defendant, it expressly provided that the contract of insurance should take effect and be in force only upon compliance with three conditions precedent, viz., that a policy should be delivered, that it should be delivered during the life and good health of the applicant, and that the premium should be paid when the policy was delivered. These conditions were never complied with. The vital, indispensable condition was that the policy should be delivered and take effect during the life and good health of the applicant; but that life had ended, that applicant was no more, and that condition could never be complied with, and therefore the contract could never take effect. *Eliason* v. *Henshaw*, 4 Wheat. 227, 229; *Carr* v. *Duval*, 14 Pet. 77, 81.

There is no view of the facts or the law under which it can be found that there was a contract between the decedent and the defendant company in this case, and the decree below is affirmed, with costs.