## PRUDENTIAL INSURANCE COMPANY OF AMERICA *v.* UNION TRUST COMPANY, ADMINISTRATOR.

[No. 8,275.    Filed June 5, 1914.]

1. INSURANCE.—*Life Insurance.—Nonpayment of Premiums.—Reinstatement.*—Under a life policy providing that in event of a lapse for nonpayment of premiums, a revival of the policy could be had within one year upon paying the arrears of premiums and furnishing evidence of insurability satisfactory to the company, where insured within the stipulated time furnished the company's local agent all the papers and proof required of him to have the policy revived, and there was no valid objection to the proof of insurability, the company could not arbitrarily refuse to revive the insurance and thus avoid liability on discovering that insured had been killed before the application and proof reached the company's home office, since, after lapsing, insured had inchoate insurance which he might at any time ripen or revive by a performance of the conditions of his contract, and on compliance with such condition, in the absence of proper objection to his insurability, such revival would relate back to the time of the application. p. 426.

2. INSURANCE.—*Life Insurance.—Nonpayment of Premiums.—Reinstatement.*—Where an insurance policy provided that in case of a lapse it would be revived within one year on payment of all arrears and furnishing satisfactory proof of insurability, an agreement in the application to revive that the policy would not be in force until the company should have consented to revive it was of no effect and furnished no ground to avoid liability, where insured had fully complied with all requirements for reviving his policy, including the furnishing of satisfactory proof of his insurability, and thereafter died before such proof and the application to revive reached the company's home office. p. 431.

3. APPEAL.—*Review.—Refusal of Instructions.*—The refusal of requested instructions, in effect covered by other instructions given, is not error. p. 433.

4. INSURANCE.—*Action on Life Policy.—Instructions.*—Where an action involved the question of whether an insurance policy, lapsed for nonpayment of premiums, had been revived by the insured's delivery of an application to revive and proof of insurability to the company's local agent, an instruction that a soliciting agent has power only to receive and forward the application, and no power to accept the risk or conclude the contract of insurance, was properly refused, since no question of taking an original application was involved. p. 433.

5. APPEAL.—*Review.—Harmless Error.—Instructions.*—In an ac-

tion on a policy of life insurance, involving the question of whether the policy had been revived after it had been lapsed for nonpayment of premiums, an instruction, mandatory in form and attempting to enumerate the facts essential to recovery, was erroneous in omitting to state the fact of payment of all arrears as one of such elements, but the error was harmless in view of the fact that no question was made as to such element of defense, and that it was in effect admitted that premium notes for such arrears were executed and delivered to defendant's agent and afterwards approved by defendant. p. 434.

6. APPEAL.—*Review.—Harmless Error.—Instructions.*—In an action involving the question of whether a policy of life insurance, lapsed for nonpayment of premiums, had been revived, a conflict between instructions setting out the elements essential to recovery, some of which included, and one of which omitted, payment of all arrears, was not prejudicial, where no question was made as to such payment. p. 434.

7. APPEAL.—*Review.—Instructions.*—An instruction that the forfeiture of an insurance policy "is not favored under the law and where the language of policies is doubtful the court will adopt that construction which will prevent a forfeiture," though objectionable as being the statement of a rule of law to govern the construction of contracts by the court, was harmless in view of other instructions given. p. 434.

8. INSURANCE.—*Action on Life Policy.—Evidence.—Admissibility.*—In an action involving the question whether a life insurance policy which had been lapsed was thereafter revived, a question asked the company's medical examiner as to his authority relative to making examinations in such cases, was properly excluded, where the company was in no position to question or limit his authority in that respect, and did not offer the evidence for that purpose, but to show that the report made by him to the company was not final or conclusive. p. 435.

9. APPEAL.—*Review.—Exclusion of Evidence.*—A question to the medical examiner of an insurance company asking "what authority do you have relative to making such examinations," was objectionable as calling for the conclusion of the witness and the court did not err in refusing to permit him to answer. p. 435.

From Marion Superior Court (82,188); *Pliny W. Bartholomew*, Judge.

Action by the Union Trust Company, administrator of the estate of Hugh O. Holmes, deceased, against the Prudential Insurance Company of America. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Whitcomb, Dowden & Stout,* for appellant.
*R. N. Miller,* for appellee.

HOTTEL, J.—Appellee as beneficiary under two separate policies of insurance issued by appellant on the life of its decedent, Hugh O. Holmes, hereinafter referred to as the insured, brought this action to recover the amount of the insurance specified therein. One policy bears date of January 2, 1905, and is for $162, the other bears date of April 29, 1907, and is for $153. The pleadings are numerous and lengthy, and, as the only error assigned and relied on for reversal is that of the ruling on the motion for a new trial, their contents are not necessary to an intelligent understanding or disposition of the questions presented by the appeal. The facts controlling such questions disclosed by the pleadings and admitted by the parties as a part of the evidence in the case are in substance as follows: Appellant is a corporation authorized to transact business as an insurance company in the State of Indiana, and has had an agency in the city of Indianapolis continuously since the execution of the policies herein sued on, which agency during all of said time has been in charge of Theodore Deming, superintendent. The premium on each of the policies sued on was payable weekly at the rate of fifteen cents a week on each policy. On March 22, 1909, the insured was fourteen weeks in arrears in the payment of his premiums on each of the policies, and by reason thereof each policy by its provisions had lapsed. Each policy contained the following provision:

"If this policy is lapsed for nonpayment of premium, it will be revived within one year from the date to which premiums have been duly paid upon payment of all arrears, provided evidence of the insurability of the insured satisfactory to the company be furnished."

On March 22, 1909, the insured at the instance of C. H. Keppel, appellant's local agent at Indianapolis, made two written applications for the revival of the policies, viz., a

separate application for each policy. Each of these applications contained the following provisions:

"I hereby declare myself, who was formerly insured under the above numbered policy, to be in as good a state of health as when said policy was issued, and that, having allowed it to become lapsed, I wish to renew it, upon the understanding that it will not be in force (although I now pay the arrears) until the company shall have consented to revive the same. In order to pay the arrears necessary to reinstate the above numbered policy I further declare I signed a premium note form for 2 dollars and 10 cents, to the terms of which form I hereby agree."

There appeared on the application the following directions to the appellant's agent taking such application:

"The agent must not enter the premiums in policy holder's receipt book until official schedule is received. If the application is rejected, the Premium Note Form must be immediately returned to applicant and the revival receipt taken up."

Insured also signed and delivered with the applications two premium note forms, viz., a separate note covering the arrears on each policy. Each of which notes contained the following provisions:

"The undersigned acknowledges * * * that the arrears of premiums on said policy amount to two dollars and ten cents and agrees that in event of the revival by the company of said policy, this form shall become a premium note for the above amount in payment of said arrears. First.—That the said amount shall bear simple interest at the rate of four per cent. per annum from the date of such revival. * * * "

Such premium note forms and the policies of insurance were delivered together with the applications for revival to appellant's agent. Appellant had as its local medical examiner at Indianapolis, Dr. Fosler, who by direction of appellant examined the insured and after making such examination filled out and signed the blank form for medical examiner's report on the back of one of the applications

and, on the back of the other application referred to such report, adopted and by reference made it his report on such other application, and it was agreed by the parties that such report was applicable to both of the policies and is as follows:

"Medical Examiner's Report. To be filled in by a regularly appointed medical examiner when the amount applied for together with policies previously issued and now in force, is $250 or more. 1. What do you believe to be the age next birthday? 42. 2. Race (white or colored)? White. 3. Height and weight (if over 15 years of age)? 5 ft 8 in. 145 lbs. 4. Does the applicant appear to be in good health? Yes. 5. Is there any physical defect or infirmity? No. 6. Has the applicant ever been rejected by this or any other company? No. 7. Has either parent or a brother or sister died of consumption? No. 8. Have you reason to suspect intemperate habits, or if female, immoral life? No. 9. Has applicant within the past five years had any serious illness or injury; spitting blood, habitual cough, etc.? If yes, give date and particulars below. No. 10. Is the heart diseased? No. 11. Are the lungs diseased? No. 12. Do you detect disease of any kind? No. 13. Have you personally examined the applicant? Yes. 14. When? Day 26. Month 3. Year 1909. 15. Is the life, in your opinion, a first-class, fair average or poor risk? First-class. * * * I certify that the above answers are true * * * D. W. Fosler, M. D., Medical Examiner."

Each of these examinations in answer to Q. 14 contained therein bears as its date March 26, 1909, but this date is not admitted by appellee to be correct, but it contends that such examination was made on or about March 22, 1909. The agent's certificate attached to such applications also shows that he personally saw the applicant; that he was in a good state of health, and that he advised the company to revive the policy. Dr. Fosler got the renewal applications, the two policies to be renewed and the two premium note forms from appellant's office here in Indianapolis and after making and signing the medical examiner's report on the

back of each application, he then, to wit, on March 26, 1909, mailed all of the papers to appellant's home office at Newark, New Jersey. These papers were each and all received by appellant at its home office at about 9 a. m., March 29, 1909. The appellant never at any time asked the insured to take any other or further steps to revive either of the policies, and, after the receipt of the papers at its home office, endorsed on each of the policies the following words:

"A lien of $2.10 bearing simple interest at the rate of four per cent. per annum, exists against these policies, subject to the terms of the premium note form, dated 4-5-09. John F. Dryden, President."

These words were afterwards, and after the death of the insured, erased. On March 27, 1909, at 9:21 a. m. the insured died from injuries received that day from a fall from a scaffold. This suit was filed October 18, 1909, and on February 21, 1910, the appellant returned to appellee by mail the premium note forms, before referred to, accompanied by a letter signed by Larz A. Whitcomb as attorney for the appellant, which letter reads as follows:

"Gentlemen: I beg leave to hand you herewith the following papers: 1. Premium Note Form—Industrial, dated March 22, 1909, and executed by Hugh O. Holmes on account of Policy No. 19,961,969 for $2.10. 2. Premium Note Form—Industrial, dated March 22, 1909, and executed by Hugh O. Holmes on account of policy No. 23,113,701, for $2.10. These instruments accompanied an application for revival of said policies made by said Hugh O. Holmes to the Prudential Insurance Company of America, and as provided therein, were to become effective as premium notes in event of the revival by the company of said policies. Said policies were never revived by the company for the reason that Mr. Holmes was accidently killed prior to the time that said applications for revival were received by the company, and while these obligations never became effective for the reason that said policies were not revived, yet I beg leave to return them to you herewith. Please acknowledge receipt thereof. Yours very truly."

The appellee received the premium note forms and letter

on February 21, 1910, and a short time thereafter, by its attorneys mailed such notes with a letter addressed to Larz A. Whitcomb, at his usual place of business, which letter with the papers enclosed was deposited in the United States mail. Neither the letters nor papers were ever received by Whitcomb, and the same are now lost and their whereabouts *unknown* to the parties to this action.

The policy first written contained the following provision:

"7th. Alterations and Waivers.—No person except the president, one of the vice-presidents, the secretary, the assistant secretary or the actuary of the company can alter this contract, or waive any condition, privilege or provision thereof."

The second policy contained the following provision:

"7th. Modification, etc.—No condition, provision or privilege of this policy can be waived or modified in any case, except by an endorsement hereon signed by the president, one of the vice-presidents, the secretary, the actuary or the associate actuary. No agent has power in behalf of the company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise, or making or receiving any representation or information."

Appellant's home office is at Newark, New Jersey, where its president, all vice presidents, secretaries, and assistant secretaries, actuaries, assistant actuaries and chief medical director are located. Dr. D. W. Fosler, the local examiner who examined the insured when he made his application for revival of his policies, and C. H. Keppel, appellant's local agent to whom the applications were delivered, each resided in and had their offices in the city of Indianapolis at the time the applications were taken and examination made.

In addition to these admitted facts witnesses testified to substantially the following facts: Sadie Holmes, the widow of the insured testified that Mr. Keppel came to their house with the papers and said to her husband that "he would

pick up the insurance, and Mr. Holmes would be in full benefit immediately if he signed those papers. Husband was examined by Dr. Fosler on Sunday before he died on Saturday, March 27th. My daughter, myself and baby were present. Keppel was there and brought the papers in. He was not there when examination was made. Medical examination was made about one week after husband made application for revival. Agent first came to see about this, Friday the 12th. He at that time, Friday, March 12th between 6 and 7 p. m., prepared application and had my husband sign it. About a week afterward on Sunday morning the physician came to examine him. He came once to examine my husband and the children and on Tuesday after my husband's death he came to examine the boy. I am positive he came only the one time before my husband's death.'' Sadie Holmes, the daughter testified that she was at home when the doctor came to examine her father; that he came on a Sunday morning—''it was a week before my father got killed. The last Sunday before he died''; that she was present when the agent came to get the applications for revival; that he came about a week and a day before the examiner came; that the agent ''was there Friday and a week from that coming Sunday the doctor came.'' Theodore Deming testified that he was the appellant's superintendent at Indianapolis, when the insured made his applications for revival; that Keppel was at that time appellant's assistant superintendent in Indianapolis, and was also a soliciting agent of appellant. Dr. Fosler identified his medical report on the back of the applications and said, in effect, that he thought ''that such report would undoubtedly be the date'' which he dated it; that the examination was made the last of the week and not on Sunday; that he had the papers with him; that the agent gets the application originally and that he gets them at the appellant's ''office here in the city—from Mr. Deming's office''.

Upon the facts herein set out it is very earnestly con-

tended by appellant that the verdict of the jury is not sustained by sufficient evidence, and·is contrary to law.

1.   In support of this contention it is in effect argued, (1) that these facts show that the applications for the revival of the policies in suit were not received at the appellant's home office until after the death of the insured and hence could not have been revived by any officer of the company at Newark, New Jersey, prior to the death of the insured and that there could be no revival of insurance on the life of a person already dead; (2) that the burden was on appellee to show that any officer, other than those of the home office, had authority to revive the policies in suit, and that the evidence wholly fails to show such authority on the part of the local agents at Indianapolis.   In support of its first contention appellant cites the following cases: *Reserve Loan Life Ins. Co.* v. *Hockett* (1905), 35 Ind. App. 89, 93, 73 N. E. 842; *Paine* v. *Pacific Mut. Life Ins. Co.* (1892), 51 Fed. 689, 692, 2 C. C. A. 459; *Roblee* v. *Masonic Life Assn.* (1902), 77 N. Y. Supp. 1098, 1099, 38 Misc. 481; *Carlson* v. *Supreme Council, etc.* (1896), 115 Cal. 466, 47 Pac. 375, 35 L. R. A. 643; Bacon, Ben. Soc. and Life Ins. §385; *Modern Woodmen, etc.* v. *Jameson* (1892), 29 Pac. (Kan.) 473; *Butler* v. *Grand Lodge, etc.* (1905), 146 Cal. 172, 176, 79 Pac. 861; *Regan* v. *Prudential Life Ins. Co.* (1900), 67 N. Y. Supp. 197, 33 Misc. 78.

The case of *Reserve Loan Life Ins. Co.* v. *Hockett, supra,* was a case where the policy of insurance contained a provision that it should not take effect unless the insured was in good health at the time of the delivery of the policy.   The application contained a similar provision and bore date of April 5, 1900.   The application was forwarded to the home office where it was approved April 9, 1900.   The policy which bore date April 5, was then forwarded to the insured who had died on April 8, 1900.   The court very properly held that, under the provision of the policy and application, before referred to, the death of the insured made the *pro-*

*posed contract* impossible. To the same effect are the cases of *Paine* v. *Pacific Mut. Life Ins. Co., supra,* and *Roblee* v. *Masonic Life Assn., supra.* The case of *Carlson* v. *Supreme Council, etc., supra,* holds in effect that if an assured neglects to take the necessary steps to become reinstated during his lifetime he can not be reinstated after his death though the period in which he might have been reinstated if living had not expired. In the case of *Butler* v. *Grand Lodge, etc., supra,* the following language quoted from the opinion on pages 176, 177 is sufficient to distinguish it from the the instant case: "Under the terms of the contract, there could not possibly be a reinstatement of the certificate prior to the stated meeting of the lodge following the payment. The provisions of defendant's law already quoted show very clearly that it was the express agreement of the parties that a beneficiary certificate could be reinstated and renewed only *during the life of the member.* The language is that it 'may be renewed *if the member be living* * * * upon the following conditions and none other; that is to say,' and then follows, in three separately numbered paragraphs, the enumeration of the various conditions already specified, *including the report to the lodge at the stated meeting and the declaration of renewal by the lodge by a majority vote.* The phrase *'if the member be living'* applies with equal force to each of the specified conditions, and *it was* thereunder *essential that the renewal of the certificate by the lodge that the member be living at the time the renewal is effected and the certificate reinstated."* (Our italics.) The case of *Regan* v. *Prudential Life Ins. Co., supra,* is specially relied on by appellant, but an examination of it will disclose facts easily distinguishable from those of the instant case. In that case the renewal applications were made by the insured through her sister who had been keeping up the premiums, and were unaccompanied by any medical examination. The company's agent who took the renewal applications represented that he had per-

sonally seen the insured, that she appeared to be in a good state of health, and advised a revival of the policy. The insured died of consumption at the city hospital before the renewal applications were received at the home office. Appellant's agent who took the revival applications had not seen the insured when he accepted the same and advised the renewal. Immediately upon receiving intelligence of the death of the insured one of the company's district superintendents notified the home office by telephone of such death and advised that no action be taken on the revival applications. The facts indicated affirmatively show that the insured in that case had failed to perform certain conditions connected with the formal applications of revival. Indeed, the plaintiff conceded such failure as is evidenced by the following language of the opinion: ''The plaintiff urges that her failure to perform certain conditions connected with the formal applications for the revival of the policies is excusable in view of the alleged representations on the part of the defendant's agent, made at the time of the execution of the revival applications, that the policies would be revived by the payment of back premiums amounting to $5.40, and upon which representations the plaintiff claims to have relied. The proof, however, does not support this contention, nor does it sustain the further claim that the company ratified the agent's act in that respect.''

So with all the cases cited by appellant, they either apply to cases where insurance was applied for in the first instance or to cases where some condition of the revival application was unperformed at the time of the death of the insured, or where the condition of revival provided for the approval of the application for revival during the life of the insured or where some valid reason for refusal to revive existed at the time the revival application was delivered to the agent of the company who had authority to prepare and receive such application and the necessary papers and unpaid premiums connected therewith. Such cases are very different

from the one under consideration and hence demanded the application of a different legal principle. In the instant case the failure of the insured to pay the premiums as they became due did not work a forfeiture of his insurance. It caused what is termed in the policies a "lapse", and for a period of one year after such lapse the insured by virtue of his contract had the right to have the policies fully revived upon his paying the arrears of premiums and furnishing evidence of his insurability satisfactory to appellant. During such period the insured had inchoate insurance which he might at any time ripen or revive by a performance of the conditions of his contract; and when such conditions were complied with by the insured, while in life, and within the period stipulated, it was not within the power of appellant, under its contract, to arbitrarily refuse to renew or revive such insurance. It is true the contract required the insured to furnish, with his application to revive, evidence of his insurability satisfactory to appellant. Such provision was doubtless sufficient to prevent an *ipso facto* revival of the policies resulting from the signing by the insured of the application and papers necessary to such revival and the delivery thereof to the agent authorized to prepare and receive them; but such provisions furnished no ground for arbitrary refusal to revive when the conditions of the policies had once been fully and completely complied with, and appellant's approval or disapproval of the proof furnished, whenever made, was necessarily required to rest on the facts and conditions existing at the time of the attempted revival, and such approval or disapproval related back to that time. If at that time the insured had failed in any substantial particular to comply with the conditions of his contract, or if any valid objection then existed to the form or substance of the application to revive or if the proof of insurability as then furnished did not meet the requirements of such contract or was false or for any other reason was subject to a valid objection, appellant's contract per-

mitted it to *reject* such application to revive, and such rejection would relate back to the date of such application.   On the other hand, if at the time of the filing of such application to revive, and the signing and delivery of the necessary papers accompanying it, there then existed no valid objection to the form or substance of such application, or papers or the proof furnished therewith, appellant, under its contract, could do but one thing, viz., revive the policy, and such revival would relate back to the time of the application to revive, and the mere fact that the insured, after he had fully complied with the conditions of his contract, died from a cause in no way involved in his proof of insurability which accompanied his revival application, but wholly the result of accident, could in and of itself furnish no valid ground or excuse for a refusal by appellant to revive such policies.   The death of the insured in no way affected appellant's right to approve or reject such application to revive, but such death foreclosed the possibility of amendment of such application to revive, or the furnishing of additional proof thereunder.   Nor should the fact that the applications to revive did not reach the home office until after the death of the insured, and hence could not have received the approval of such office while the insured was alive have a controlling influence in view of the terms of the policies here involved.   This is so for several reasons. As before stated the policy by its terms provides for a lapse · of insurance on account of default in payment of premiums and not for a forfeiture.   It recognizes that the insured has the right to insurance during the period therein provided, on the performance by him of the conditions therein contained.   By all of its provisions and terms the revival of the insurance relates back to the application.   The insurance is picked up or renewed by the payment of the back premiums, and future premiums are necessarily calculated from the date to which the back premiums are paid, when the revival application is delivered to appellant's local

agent authorized to receive it, and the insurance continues from such date the same as though there had been no lapse on account of such failure to pay premiums.

The appellant recognizes and treats the signing and delivery of the papers and proof necessary to a revival of such insurance to its local agent authorized to receive them, as a *prima facie* revival of the policy. This is evidenced by the instructions or directions on the application hereinbefore set out, the second clause of which contemplates that such local agent shall give to the insured a revival receipt and directs that if the application be *"rejected"* the premium note form must be immediately returned to the applicant and the receipt taken up. In considering a question similar to that here presented the supreme court of Wisconsin in the case of *Leonard* v. *Prudential Ins. Co.* (1906), 128 Wis. 348, 107 N. W. 646, 116 Am. St. 50, said: "So the relations between the parties to the insurance contract when the assured made his application to revive the same were not, by any means, the same as those between an applicant for a policy in the first instance, and the company applied to, as appellant's counsel contend. In the latter the application could be rejected at the pleasure of the company; the attitude of the applicant being that of one offering to take from another that which such other is not under any legal obligation to deliver. In the case in hand the attitude of applicant was that of one demanding a right which, upon the conditions precedent in the contract to its ripening into a complete obligation, it was not within the power of appellant to successfully withhold."

It is suggested by appellant that the insured in his application to revive in effect agreed that the policy would not be in force until the company consented to revive it. As applicable to this contention we quote the language of the court in the case of *Davidson* v. *Old Peoples Mut., etc., Soc.* (1888), 39 Minn. 303, 304, 305, 39 N. W. 803, 1 L. R. A. 482. "It is suggested that, at the time of

the reinstatement, the beneficiary stipulated that, if the death of the assured occurred within sixty days of that date, she would be entitled to only the money actually paid to the society. But this was a mere *nudum pactum*. To effect a reinstatement, no consent on the part of the society was necessary. Only two things were required, viz., furnishing a certificate of the good health of the assured, and the payment of arrears. These were done, and thereupon the association was bound under its contract to reinstate, and had no right to impose any other condition. Neither the promise to do a thing, nor the actual doing of it, will be a good consideration, if it is a. thing which the party is bound to do by a subsisting contract with the other party, at least unless done as a compromise of a *bona fide* dispute with reference to the obligations or rights of the parties under the contract, of which there is no claim in this case.''

We think the facts of this case bring it within the rules announced in the two cases from which we have just quoted. The appellant through its agent, who had the authority and necessary blanks to take and receive renewal applications and prepare the required proof connected therewith, solicited the insured to make such application. At his instance, and through him, the insured signed and delivered to appellant all the papers and proof required of him for such purpose, and, before his death, had done all that his contract required that he should do to entitle him to such renewal and all that appellant demanded of him for such purpose. The agreement of the parties shows that such applications were made, and that they, together with the policies and premium note forms were delivered to appellant's agent on March 22, 1909. The examiner's report would indicate that the examination was not made until March 26, but this fact is not admitted by appellee. However, in view of the conclusion we have reached on the other branch of the case this phase of the evidence is not of controlling importance. There is no evidence showing

or tending to show anything left undone by the insured when he died, or any claim by appellant that anything was omitted, or that any valid objection of any kind existed against said applications when made, or against the character or manner of the proof furnished affecting the insurability of the insured at the time such applications were made. There is no evidence that such applications were ever rejected by the home office but, on the contrary, there was undisputed evidence affirmatively showing that the applications had in fact received the approval of such office and, that the premium note forms were retained by it until after this suit was filed, and that appellant's defense herein was based wholly on the fact that the insured died before such approval of said revival applications. We therefore hold that the verdict of the jury is sustained by sufficient evidence and is not contrary to law.

Error is also predicated on the action of the court in the giving and refusing to give certain instructions. Our statement of the facts of the case and discussion of the law applicable thereto in connection with the other grounds of the motion for a new trial renders unnecessary a discussion of appellant's several objections to each particular instruction. It is insisted that the court should have given instructions Nos. 1, 2, 3 and 8 tendered by appellant. These instructions were, in effect, covered by other instructions given, which were as favorable to appellant as the facts and law of the case herein indicated warranted. It is also insisted that instructions Nos. 6 and 7 requested by appellant should have been given. These instructions would have told the jury in effect that a soliciting agent of a life insurance company has power only to receive and forward the application, and no power to accept the risk or conclude the contract of insurance. While it is true that generally speaking such agent is limited in his authority, as indicated, when taking

an application for insurance in the first instance, the question of taking such original application was not involved in this case, and hence such instructions were not applicable to the facts, and were properly refused.

Instruction No. 7 given by the court on its own motion is objected to on the ground that it was mandatory and attempted to enumerate the facts essential to recovery and omitted the fact of payment of all arrears as one of such elements. The objection is a valid one, but as no question was made as to this element of defense and it was admitted, in effect, that premium note forms furnished by appellant were signed and delivered and accepted by its agent and afterwards approved at the home office, no harm could have resulted from the giving of the instruction. Instructions Nos. 8 and 9, given by the court on its own motion, are objected to on the ground that they supplied the essentials of recovery absent in No. 7 and hence were in conflict therewith. Any error prejudicial to appellant on account of such conflict resulted from the absence of such elements in No. 7, and not from their presence in Nos. 8 and 9, and hence what we have said as to instruction No. 7 disposes of the objections to Nos. 8 and 9.

Instruction No. 10 given by the court on its own motion told the jury that a forfeiture of an insurance policy ''is not favored under the law and where the language of policies is doubtful the court will adopt that construction which will prevent a forfeiture''. The objection to this instruction is that it is a rule of law to govern a construction of a contract that is for the court and not proper as an instruction to a jury. The instruction as given was subject to the criticism made against it, but in view of the other instructions given in the case we are of the opinion that no harm could have resulted from giving it. §§407, 700 Burns 1914, §§398, 658 R. S. 1881. Indeed, if we are correct in our view of the case indicated in our

discussion of the evidence the instructions were more favorable to appellant than the law and the facts warranted.

Lastly it is urged that the court erred in refusing to permit the witness Dr. Fosler to answer the following question: "What authority do you have relative to making such examinations?" This witness had already testified that he had no written contract of employment with the company and it is insisted by appellant, in effect, that the contract being verbal the appellant should have been permitted to show the extent of authority of the witness thereunder. Assuming, without deciding, that the principle contended for by appellant is correct, we think the form of the question objectionable in that it called for the conclusion of the witness as to the extent of his authority *"relative to making such examination"*. In any event appellant, under the admitted facts, was in no position to question or limit the authority of the witness *"relative to the examination"*, and in fact the offered evidence showed that such was not the purpose of the question, but that its purpose was to show that the report made by him to the company was not final or conclusive. It is also apparent that under our view of the law applicable to the facts of the case as herein expressed the excluded evidence could have had no controlling influence on the result.

We find no reversible error in the record and the judgment below is affirmed.

NOTE.—Reported in 105 N. E. 505. As to whether discontinuance of cause of forfeiture revives policy, see 80 Am. St. 305. On the question of the judicial control of discretion as to reinstatement of insured, see 40 L. R. A. (N. S.) 148. See, also, under (1, 2) 25 Cyc. 847; (3) 38 Cyc. 1711; (4) 25 Cyc. 951; (5, 6, 7) 25 Cyc. 956; (8) 25 Cyc. 931; (9) 17 Cyc. 209.