## Young *v.* Intersouthern Life Insurance Company.

[No. 10,445.   Filed December 10, 1920.]

1. INSURANCE.— *Fraud.*— *Forfeiture.* — *Waiver.* — *Retention of Premiums.*—Where an insurance policy is procured by fraud, the contract is voidable at the option of the insurer, and, in such a case, the retention of the premium paid after discovery of the fraud may be sufficient to show a waiver of the fraud and election to stand by the contract.   p. 332.

2. INSURANCE.—*Life Policy.*—*Execution After Death of Applicant.*—*Validity of Contract.*—Where an application for a life insurance policy and the policy itself stipulated that the policy should not become effective unless applicant was alive and in good health at the time it was delivered, a policy which was approved by the company and mailed to its agent after insured had died, of which fact the company was ignorant, was void, regardless of the fact that the company retained the premium paid.   p. 332.

From Marion Superior Court (102,099); *W. W. Thornton*, Judge.

Action by James Stobbo Young against the Intersouthern Life Insurance Company.   From a judgment for defendant, the plaintiff appeals.   *Affirmed.*

*Guilford A. Deitch* and *Frank G. West*, for appellant. *Ferdinand Winter* and *Helm Bruce*, for appellee.

This is an action on three policies of life insurance. It appears from the evidence that W. V. Greene was an agent for appellee, and that appellant was employed by him as a helper in soliciting business.   The company allowed Greene all of the first annual premium as a commission, but required him to turn in $6 on each application to cover the expense of medical examination and inspection.   On December 29, 1913, at Laurens, South Carolina, while acting on behalf of Greene, appellant obtained from his father, George Ferguson Young, an application for insurance in the aggregate amount of $5,000, to be in three policies and payable to

the son as beneficiary. The total premium on the policies for the first year was fixed at $304.15. The father paid $6 in cash, and was told by his son that he (the son) would pay the balance out of his commission. The application and the $6 were forwarded to Greene at Louisville. The application was received at the company's home office on January 2, 1914, by its vice president, who then turned it over to the medical inspector. The medical inspector then indorsed on the application "Approved Dec. 31, 1913." The applicant was examined by Dr. Hughes, the medical examiner at Laurens. Dr. Allen, the medical inspector, sent out an inspection inquiry to learn whether the applicant was a desirable risk, and on January 7, 1914, received an unfavorable report thereon. He then wrote Dr. Hughes, and received his answer dated January 10. Under the rules no policy could be issued unless the application had the approval of both the medical inspector and the secretary. Dr. Allen finally approved the application January 15, 1914, and passed it to the secretary. On January 16, 1914, the secretary approved it, canceled the date "Dec. 31, 1913," by drawing a horizontal line through it, and wrote above it "January 16, 1914." On January 13, 1914, Greene was in the home office and inquired of the vice-president concerning the application. Thereupon the vice-president sent his stenographer to Dr. Allen for information. When she returned she stated, "The application has been passed." At that time Greene paid to the company $6 on account of the application. On January 26, 1914, the policies were made out, and on the next day they were mailed to Greene at Laurens. No one having called for the policies, the postmaster at Laurens returned them. Sometime within the first week of February, 1914, the policies were handed to Greene at the home office to be delivered by him to the applicant, accompanied by an

instruction in writing not to deliver the policies unless the person whose life is insured is, at the time of such delivery, in good health, of temperate habits and insurable condition. Greene immediately sent the policies by mail to the appellant at Laurens. The company never repaid, or offered to repay, any money received, directly or indirectly, on account of this transaction.

The application contained the following stipulation:

"I agree that the company shall incur no liability under this application until it has been received, approved and the policy issued and delivered and the premium has actually been paid to and accepted by the company during my lifetime while I am in good health, and that any delivery of the policy to an agent or other person or mailing same to me shall not be regarded as delivery to me until the policy has actually been received by me and the full first premium paid in cash. No statement made by the person soliciting this application shall be binding on the company, and this application and the policy issued as a result, covers the entire contract."

Each policy contains the following stipulation:

"This contract is made in consideration of the application therefor, a copy of which is set out on the third page hereof and made a part of this contract and in further consideration of the sum of sixty and 83/100 dollars to be paid in advance on or before the delivery of this policy, which shall not take effect unless insured is alive and in good health at the time of delivery."

George Ferguson Young was murdered on the night of January 12, 1914. When Greene paid the $6 and inquired about the application, he knew that the applicant was dead; but he did not inform the company of that fact. The first information the company acquired of the death of the applicant was from appellant's letter dated February 14, 1914. The company immediately answered by mail, disclaiming liability on the ground

that when the policies were made out it had no knowledge of the fact that the applicant was then dead, and calling attention to the stipulations in the application and policies.

The court directed the jury to return a verdict for the defendant.

Counsel for the appellant contend:   (1) That there is some evidence tending to show that the application was approved in the lifetime of the applicant, and as to that question the plaintiff was entitled to go to the jury; (2) that by retaining the money paid by the applicant the company waived the stipulations in the application and policies and elected to treat the policies as valid contracts of insurance, notwithstanding the death of the applicant under the circumstances above stated.

DAUSMAN, P. J. (after making the foregoing statement) :   In view of the stipulation in the application, it is immaterial when the application was approved.   Counsel have ably discussed the doctrine of waiver; but that doctrine is not involved. Where a policy is procured by fraud, the contract is voidable at the option of the insurer; and in that case the retention of the premium after discovery of the fraud may be sufficient to show a waiver of the fraud and an election to stand by the contract. But we are now dealing with an entirely different principle.   In the case at bar it is too plain for argument or elaboration that no contract of insurance was made—consummated, completed.   The contention of appellant's counsel is equivalent to asking the court to make a contract between the insurance company and a dead man. When George Ferguson Young died, the subject-matter of the contemplated contract and one of the parties to the negotiations passed out of existence.   By virtue

of the stipulations of the parties, and in view of the fact that the company had no knowledge of the death of the applicant, the delivery of the policies to the person named as beneficiary therein was without any force or effect whatsoever. *Misselhorn* v. *Mutual, etc., Life Assn.* (1887), 30 Fed. 545; *Paine* v. *Pacific, etc., Ins. Co.* (1892), 51 Fed. 689, 2 C. C. A. 459; *Rogers, Admr.,* v. *Charter Oak Life Ins. Co.* (1874), 41 Conn. 97; *Reserve Loan Life Ins. Co.* v. *Hockett* (1905), 35 Ind. App. 89, 73 N. E. 842; 25 Cyc 719, and authorities there cited.

Judgment affirmed.